## Rogers v. Tighe

*Stephen A. Teller*, for plaintiff.
*William S. McLean*, for defendant.

PINOLA, J., September 30, 1957.—Defendant asks that proceedings in a trespass action be stayed because their continuation is malicious and vexatious and constitutes an abuse of the court's process.

On March 4, 1957, plaintiff swore in his complaint that defendant, operating his automobile on the left or wrong side of Main Street, in the City of Pittston, struck plaintiff's car which was parked in front of his dwelling. He sought to recover damages amounting to $269.14.

On April 15, 1957, he instituted an action against Robert Wertz before an alderman of the City of Wilkes-Barre. From the transcript it appears that at the hearing plaintiff testified that Wertz struck Tighe's car, driving it into plaintiff's car and thus causing the damage. An appeal was taken by Wertz and in paragraph 3 of the complaint, filed on May 10, 1957, to no. 201, July term, 1957, plaintiff swore that his automobile was "struck in the front by an automobile owned by one, William Tighe. The Tighe automobile

was parked against the curb of North Main Street aforesaid immediately in front of the parked automobile of the plaintiff. While the two cars were so parked, an automobile owned and operated by the defendant, being driven south on North Main Street, crossed over to the easterly side of said street and struck the end of the Tighe automobile driving it into the plaintiff's car, thereby causing the damage to the plaintiff. . . . ."

In this action he sues for the same sum, to wit, $269.14, but he asks to be reimbursed for expenses of bus fares and the cost of storage.

Both cases were, by agreement of counsel, submitted to a board of arbitration. Before the hearing could be held, plaintiff settled with Wertz and the suit against him was discontinued. He proposed to pursue this case unless Tighe paid $50. Now he will drop it if defendant pays $20.

Counsel for defendant argues that it is wasting taxpayers' money to require the county to spend $75 for the payment of three arbitrators and that his client is unduly harassed by the vexatious conduct of plaintiff and his counsel.

With this we agree.

When plaintiff's counsel signed the complaint in this case, he certified that to the best of his knowledge, information and belief there was good ground to support the complaint: Pa. R. C. P. 1023 (b).

When a few weeks later, in another suit, the facts are stated otherwise, we must assume that counsel learned the true facts after certifying to the first complaint. In the second complaint by his signature he certified that the accident resulted, not as had been stated in the complaint against Tighe, but by Wertz running into Tighe's car and pushing that car into the automobile of plaintiff. Having settled with Wertz, under what theory can his client, who swore to both

complaints, or he who certified to both complaints, pursue this action?. In our opinion, there is but one answer. It is a "shake-down" for a mere pittance. To such conduct we will lend no countenance.

A stay of proceedings may be ordered to prevent abuse of process or where the action is brought in bad faith or is malicious or vexatious: 1 C. J. S. 1413.

To permit plaintiff to continue this action before a board of arbitrators at the cost of $75, when he has no cause of action, simply because defendant refuses to pay him $20, is to permit vexatious proceedings and abuse of process.

In Keeler v. King, 1 Barbour (N. Y.) 390, plaintiff recovered a judgment against defendant. He then brought suit on the judgment and recovered a second judgment. He continued this process until he had four judgments. In a letter counsel wrote that his client intended to continue suing until the debt was paid. The court declared, page 391:

"Without denying the right of the plaintiff, as a general rule, to bring a suit upon a prior judgment, still, this court has such a control over its own process, that it ought not to permit it to be perverted, or used for any improper purpose. It, certainly, never could, with any regard to its own dignity, allow its proceedings to be prostituted to the mere purpose of increasing the costs of the attorney."

The decision in Stewart v. Butler, 59 N. Y. S. 573, presents us with a fine collection of applicable cases. There plaintiff claimed to be the heir of a person alleged to have died intestate in 1876, leaving a widow who died in 1886. In 1891 he brought ejectment to recover possession of certain premises owned by the deceased at his death. The complaint was twice dismissed on the ground that plaintiff had not proved that he was the heir of the deceased. An appeal was taken, but not prosecuted. He never paid any of the costs

awarded against him, and was irresponsible. At the time of beginning the ejectment suit at bar, plaintiff began several other similar actions against persons owning and holding real estate which was owned by the deceased at his death. In his motion to dismiss the action, defendant alleged, and plaintiff did not deny, that the suit was brought to compel defendant to buy peace. Counsel for plaintiff did not make affidavit that they believed plaintiff had a cause of action. In granting a motion to dismiss the action, the court said, page 578:

". . . this is a baseless, vexatious, and harassing action, begun with no hope or expectation of ultimate success, but only in the hope that the defendants may find it easier and cheaper to buy off the plaintiff and his attorneys than to contest the action."

Scott, J., declared, page 574, that the motion to dismiss the action "appeals to the inherent power of the court to exercise such efficient control over every proceeding in an action as to effectually protect every person actually interested in the result from injustice, oppression, or fraud, and to prevent the court itself and its process from being made the instrument of wrong. The inherent power, though seldom appealed to, has yet been exercised not infrequently in this country and in England. As was said by Judge Ingalls in People v. Hektograph Co., 10 Abb. N. C. 359, 'The court is vested with the control of its process, records, and proceedings so far as to prevent their being improperly employed, through fraud or collusion, to injure the citizen, or to deprive him of his just rights;' and he cites a large number of cases to support and illustrate the proposition thus laid down. It is true that no statutory authority can be found for dismissing a complaint because the action is clearly vexatious, frivolous, or groundless, but this fact alone is no answer to the assertion of the power of the court so to do. . .

"A leading case is Bank v. Pooley, 54 Law J. Q. B. 449. The action had been brought by Pooley to recover damages for the alleged wrongful acts of the bank in fraudulently procuring the plaintiff to be adjudicated a bankrupt. Two former actions by Pooley, not against the bank, but against other defendants, for whose actions the bank was responsible, had been dismissed, and Pooley had failed to pay the costs thereon. A motion was made to dismiss the action as vexatious and harassing, or to stay proceedings until the costs of the former actions had been paid. The court below does not seem to have given much consideration to the motion to dismiss, but the house of lords placed its decision squarely upon the proposition that the court had inherent power to dismiss the action as frivolous, and should do so. The lord chancellor, in the course of his opinion, said:

" 'In the view which I take of this case, it is not necessary to determine whether the view of the facts taken by the court of appeal, that the two actions brought by the respondent were not substantially between the same parties, was right or not. The judges of the court of appeal do not seem to have addressed themselves (and I think that your lordships would presume that the course of the argument did not really direct them) to the other questions, whether the action should be dismissed altogether as frivolous and vexatious. ... In my opinion, the order which the court of appeal ought to have made was to dismiss the action altogether as frivolous and vexatious. Upon that point I entertain a very clear opinion. Before the rules were made under the judicature act, the practice had been established to stay a manifestly vexatious suit which was plainly an abuse of the authority of the court, although, so far as I know, there was not at that time any statute or rule enabling the court to do it. The power seemed to be inherent in the jurisdiction of every court of justice

to protect itself from the abuse of its own procedure.'

"In the same case Lord Blackburn said:

" 'At common law originally the judgment of the court was always obtained either by a demurrer or any other proceeding upon which the record gave a judgment, or an issue was taken of fact and a verdict . . . . . was given upon the record. But from early times (I rather think, though I have not looked at it enough to say, from the earliest times) the court had inherently in its power the right to see that its process was not abused by a proceeding without reasonable grounds, so as to be vexatious and harassing. . . . . The court had the right to protect itself against such an abuse; but that was not done upon demurrer, or upon the record, or upon the verdict of a jury, or evidence taken in that way, but it was done by the court informing its conscience upon affidavits, and by a summary order to stay the action which was brought under such circumstances as to be an abuse of the process of the court, and in a proper case they did stay the action.' "

He pointed out, page 576, that a court of equity could restrain vexatious and harassing suits at law, but that "it is not necessary, however, to resort to an affirmative action in equity to accomplish the purpose. 'The more usual course in modern times, especially in this state, has been to grant the same relief on motion as might be obtained on formal suit.' . . . . There seems to be no doubt of the inherent power of the court, in the absence of any statute on the subject, to dismiss or perpetually stay groundless, vexatious, and harassing litigations."

The court commented on the fact that plaintiff produced no affidavit or certificate from any counsel that he believes that plaintiff has, in fact, a cause of action. Here we have the unusual situation of having two certificates by the same counsel which cannot stand together. We must, therefore, assume that the later one

correctly states the facts, especially because plaintiff recovered his damages from the second defendant, Wertz.

Plaintiff's counsel in open court stated that in spite of the sworn complaint, his client believes that he is entitled to a contribution from defendant Tighe and that is why he is pursuing the action.

We agree that this is a baseless, vexatious and harassing action and that plaintiff's conduct constitutes an abuse of the process of the court. We believe that this is a proper case for the exercise of that most wholesome doctrine that a court has the power of stopping such litigation.

Accordingly, we enter the following

*Order*

Now, September 30, 1957, at 3:30 p. m., the proceedings in this case are perpetually stayed.